UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETSY KWASNY,

                Petitioner,              CIVIL NO. 2:15-CV-13475
                                         HONORABLE GEORGE CARAM STEEH
v.                              UNITED STATES DISTRICT JUDGE

ANTHONY STEWART,

                Respondent.
_____/

### OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Betsy Kwasny, ("petitioner"), confined at the Huron Valley Women's

Complex in Ypsilanti, Michigan, seeks the issuance of a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  Petitioner was convicted by a jury in June, 2011,

in the Berrien County Circuit Court of uttering and publishing, three counts of

possessing or using a financial transaction device without consent, and drawing a

check on a bank without a bank account.  Petitioner was separately convicted by

a jury in the Berrien County Circuit Court in February, 2012 of subornation of

perjury and perjury.  Petitioner's two convictions were consolidated on appeal.

Petitioner filed two separate habeas applications challenging these different

convictions but has requested that these two separate cases be consolidated for

review.  The Court grants petitioner's request to consolidate the two cases for

habeas review.  The Court denies the petition for writ of habeas corpus.

## I.  Background

This Court recites verbatim the relevant facts relied upon by the Michigan

Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1).  *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> In Docket No. 306784, defendant was charged with uttering and publishing, MCL 750.249, involving a June 1, 2009, check given to Colleen Kennedy in lower court no. 2009–003571–FH (the Kennedy case); three counts of possessing or using a financial transaction device without consent, MCL 750.157n, involving the use of the credit card belonging to Marcel and Aldeane Everhart for three ATM withdrawals on November 24, 2008, in lower court no. 2009–004979–FH (the Everhart case); and drawing a check on a bank without a bank account, MCL 750.131a, involving a June 23, 2008, check given to Kelsie Penley in lower court no. 2010–005474–FH (the Penley case). The three lower court cases were consolidated for a single trial (the June 2011 trial), and defendant was convicted of all charges.  The trial court sentenced defendant as an habitual offender, second offense, MCL 769.10, to concurrent prison terms of 36 to 252 months for the uttering and publishing conviction and 210 days for the other convictions.  Defendant appeals as of right.  We affirm defendant's convictions, but remand for entry of a new order of restitution in the Everhart case.
>
> In Docket No. 309924, following a jury trial, defendant was convicted of subornation of perjury, MCL 750.424, and perjury, MCL 750.422. The trial court sentenced defendant as a habitual offender, second offense, MCL 769. 10, to prison terms of 60 to 270 months, which were to be served consecutively to any sentences that defendant was currently serving.  Defendant appeals as of right. [1]
>
> *********************************************************************************
> In the Everhart case, without consideration of any evidence of any of

---

[1]  Defendant's appeals were consolidated by order of the Court. *People v. Kwasny*, unpublished order of the Court of Appeals, entered May 24, 2012 (Docket Nos. 306784, 309924)(footnote original).

defendant's other acts, including evidence of the charged offenses in the Kennedy case and the Penley case and evidence of defendant's prior misdemeanors, the evidence of defendant's guilt was overwhelming. Jason Dillenbeck and Emily McCachren, employees of the Chase Bank that housed the ATM where the three $400 withdrawals were made on November 24, 2008, viewed footage of the ATM withdrawals. When shown a photograph lineup, both Dillenbeck and McCachren immediately identified defendant as the person who made the withdrawals. In addition, the charges on the credit card that the Everharts denied making included charges at a casino and a casino restaurant, a charge to the city of Bridgman, a charge to Tia's Balloons & Gifts, and a charge to a Super 8 Motel. Defendant was known to frequent the casino; the charge to the city of Bridgman paid defendant's water bill; Tia's Balloons & Gifts was located in the Alabama town where defendant's mother lived; and keycards to a Super 8 Motel were found in a nightstand in defendant's house. Further, after defendant left Michigan in the summer of 2009, Michael Kwasny, her husband, found a box containing mail belonging to the Everharts, including credit card bills, in their house. This overwhelming evidence of defendant's guilt was not diminished by Sarah Brunke, who testified that, acting under Michael's direction, she was the person who made the three ATM withdrawals. Based on the trial court's statement, made outside the presence of the jury, that it could not recall testimony that was "more incredulous and patently false" than the testimony of Brunke, it is reasonable to conclude that the jury also did not believe Brunke's testimony, especially where Brunke testified that she had used the Everharts' credit card to buy groceries before she made the ATM withdrawals but no such charges appeared on the credit card bill. Under the circumstances, it does not affirmatively appear that it is more probable than not that an error by the trial court in denying defendant's motion to sever was outcome determinative in the Everhart case.

*********************************************************************************

Without consideration of any evidence of defendant's act of using the Everharts' credit card, the prosecutor presented overwhelming evidence of defendant's guilt in the Kennedy and Penley cases. Penley, who in 2008 was dating defendant's son George Kaurin, testified that defendant signed the June 23, 2008, check. Elizabeth Spencer and Catherine Sorenson, tellers at the Fifth Third Bank where Penley deposited the check, testified that Penley was accompanied by a woman when she came into the bank and that Penley introduced the

woman to Spencer as her boyfriend's mother. Kennedy testified that defendant gave her the June 1, 2009, check for $3,200. In text messages that were sent to her from defendant's telephone, Kennedy received promises from "Liz," the name by which Kennedy knew defendant, that money for the bounced check had been sent. In addition, two police officers testified that they had previously investigated defendant for either giving a check drawn on a closed account or a nonsufficient funds check. The evidence of defendant's guilt was not seriously undermined by defendant's witnesses, as there was an apparent lack of credibility for many of them. For example, Gerald Schwartz, who was defendant's boyfriend in May 2009, Kaurin, and Brunke testified that Schwartz and defendant left Michigan on May 31, 2009, in the morning. However, after Kaurin and Brunke were shown the program from Kaurin's May 31, 2009, graduation, which showed 1:00 p.m. as the time of the graduation, they changed their testimony, claiming that Schwartz and defendant left Michigan in the evening on May 31, 2009. In addition, although Wendy Carlson, defendant's handwriting expert, testified that it was her opinion that Michael signed the checks given to Penley and Kennedy, she also testified that Michael signed the four checks that were the subject of Brunke's four uttering and publishing convictions. Brunke however, testified that she knew and had previously admitted that Michael had not signed those checks. Under these circumstances, where there was evidence that defendant had a pattern of using nonsufficient fund checks or checks belonging to closed accounts, including twice using young women to cash bad checks, and where credibility questions as to some of defendant's witnesses were raised, it does not affirmatively appear that it is more probable than not that an error by the trial court in denying defendant's motion to sever was outcome determinative in the Kennedy case or the Penley case.

*People v. Kwasny*, No. 306784, 2013 WL 5857632, at * 1–3 (Mich. Ct. App. Oct. 31, 2013)(internal citations omitted).

In addition to this evidence, Sarah Brunke testified at petitioner's perjury and subornation of perjury trial in 2012 that she began living with petitioner and her family during her senior year of high school. At some point, she moved to the State of Virginia with petitioner. (Tr. 2/21/12, pp. 219-20). While living in Virginia,

Brunke became aware of criminal charges in Michigan against petitioner relating to the Everhart's credit card and checks involving Colleen Kennedy and Kelsie Penley.  Ms. Brunke indicated that she testified in petitioner's first trial of 2011 as a defense witness, in which Ms. Brunke testified she was responsible for those criminal acts and that petitioner was not.  Ms. Brunke testified at petitioner's 2012 perjury trial that she was not responsible for the Everhart's credit card charges or with the checks of Colleen Kennedy and Kelsie Penley. (*Id.*, pp. 220-22).  Brunke further testified at petitioner's perjury trial that petitioner encouraged her to lie at the first trial of 2011 and to testify falsely that petitioner was not guilty of any of the criminal charges involved because either Ms. Brunke or Michael Kwasny were responsible. (Tr. 2/22/12, pp. 232-248).

Petitioner's two convictions were consolidated on appeal and affirmed, although the case was remanded for a new order of restitution. *People v. Kwasny*, Nos. 306784, 309924, 2013 WL 5857632 (Mich. Ct. App. Oct. 31, 2013), *judgment vacated in part, appeal denied in part*, 497 Mich. 908, 856 N.W.2d 70 (2014).  Further facts will be discussed when addressing petitioner's claims.

Petitioner filed two separate habeas applications under this case number. In the first petition, petitioner seeks relief from her 2011 convictions on the following grounds:

I. The trial court abused its discretion and denied due process when it refused to sever the cases.

II. The trial court abused its discretion when it admitted surprise, inflammatory evidence of an $18,000 uncashed check.

III. The trial court abused its discretion by failing to adequately articulate a "substantial and compelling" reason to its extreme upward departure from the sentencing guidelines, in violation of statute and the Eighth Amendment.

In her second petition, petitioner seeks relief on the following grounds from

her 2012 perjury conviction: [2]

IV.  Kwasny is entitled to consecutive (sic) re-sentencing because the legislature never intended that concurrent (sic) sentencing was within the applicable sections of the perjury statute.

V. Judge Charles Lasata abused his discretion requiring retrial for:

> a. Failing to grant a motion for a mistrial for Kwasny's prejudicial remarks about the judge's previous harshness in sentencing her and alleged infidelity between her and the judge.

> b. Failing to grant a mistrial after Kwasny's remarks of frustration with the prosecutor's questioning in court proceedings.

> c. Failing to give a proper instruction to the jury to disregard Kwasny's remarks regarding her prior sentencing.

> d. Subsequently granting the prosecutor's requests and allowing the prosecutor to argue that Kwasny's outbursts should be considered by the jury adverse to her defense.

VI. The prosecutor engaged in misconduct during closing and sentencing concerning facts not in evidence, vouching for Sarah

---

[2]  Because the Court is consolidating the two petitions, *infra*, the Court will renumber the claims raised by petitioner in her second petition to follow in sequential order the claims raised by petitioner in her first petition.

Brunke, arguing Kwasny was lying, and shifting the burden of proof to Kwasny.

VII. It violated equal protection and due process to have a judicially biased judge.

VIII. Kwasny is entitled to resentencing because there was an upward departure unsupported by substantial and compelling reasons.

IX. Kwasny was denied due process because the court, based on its biased and unreviewable perception, made an upward departure where Kwasny insisted on her innocence and her right to a fair and unbiased trial.

X. There was insufficient evidence to convict Kwasny where the primary testimony against her was from Brunke, a witness who herself was prosecuted for perjury and who contradicted her prior sworn testimony.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III. Discussion

**A. The motions to consolidate are granted.**

On October 25, 2016, this Court issued an order of clarification asking

petitioner to specify which of the convictions that she was challenging, in light of the fact that she filed two separate form habeas petitions, with one challenging her 2011 convictions and one challenging her 2012 convictions.

Petitioner filed a response to the order, indicating that she wished to challenge both convictions in this single habeas petition.  Petitioner requested that both cases be consolidated into one case.

A federal district court has the discretion to consolidate different state convictions into a single habeas petition. *See e.g. Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001)**.**  In the interests of time and judicial economy, this Court consolidates petitioner's two habeas applications into one action pursuant to Fed.R.Civ.P. 42. *See Bernal v. Helman,* 958 F. Supp. 349, 351-52 (N.D. Ill. 1997).

**B.  Claim # 1.  The misjoinder claim.**

Petitioner first argues that her right to a fair trial was violated in her 2011 trial when the judge three unrelated cases into a single trial.

Improper joinder does not, by itself, violate the federal constitution. *United States v. Lane,* 474 U.S. 438, 446, n. 8 (1986).  The Supreme Court in *Lane* suggested in passing that misjoinder could rise " to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Id.*  The Sixth Circuit noted that this language in *Lane* concerning a court's failure to sever criminal charges is simply dicta and

thus not clearly established federal law. See *Mayfield v. Morrow,* 528 F. App'x.

538, 541-42 (6th Cir. 2013).  Because "'clearly established Federal law' for

purposes of § 2254(d)(1) refers to 'the holdings, as opposed to the dicta, of [the

Supreme] Court's decisions[.],'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. at 412),

the Sixth Circuit concluded that the habeas petitioner could not rely on *Lane* to

obtain habeas relief on his claim that he had been deprived of his right to a fair

trial when the judge denied his motion to sever different rape charges. *Id.*  The

Ninth Circuit has likewise held that a habeas petitioner could not rely on the

Supreme Court's dicta in *Lane* to obtain habeas relief on an improper misjoinder

claim, particularly where that dicta was merely mentioned as a comment in a

footnote of the opinion. See *Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir.

2010).  Another judge in this district, in rejecting a similar claim, indicated that he

had "found no Supreme Court cases holding that a defendant in a criminal case

has a constitutional right to a separate trial on each of the charges against him."

*Rodriguez v. Jones*, 625 F. Supp. 2d 552, 560-61 (E.D. Mich. 2009)(Rosen, J.).

Given the lack of holdings by the Supreme Court on the issue of whether a

state court violates a habeas petitioner's due process rights by joining together

unrelated criminal charges in a single trial, the Michigan Court of Appeals'

rejection of petitioner's improper joinder claim was not an unreasonable

application of clearly established federal law. See *Wright v. Van Patten,* 552 U.S.

120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006); *See also*

*Comaduran v. Clark,* 452 F. App'x. 728, 728-29 (9th Cir. 2011)(California appellate court's rejection of robbery defendant's claim that trial court violated his right to due process by joining charges arising from three prior burglary-related incidents was not contrary to, nor an unreasonable application of, clearly established federal law, so as to entitle petitioner to habeas relief).

Moreover, such claims have typically been rejected by the Sixth Circuit even on direct review of federal criminal convictions.  The Sixth Circuit held that to establish prejudice from joinder, a defendant must point to specific evidence that the joinder was prejudicial and "an unproven assertion is not compelling evidence of actual prejudice." *U.S. v. Saadey*, 393 F. 3d 669, 679 (6th Cir. 2005). A jury is presumed capable of considering each criminal count separately and any prejudice arising from trial of joined offenses may be cured by limiting instructions. *U.S. v. Cope*, 312 F. 3d 757, 781 (6th Cir. 2002).  "Error based on misjoinder is almost always harmless where...the trial court issues a careful limiting instruction to the jury on the issue of possible prejudice resulting from the joinder." *U.S. v. Cody*, 498 F. 3d 582, 587 (6th Cir. 2007).

"[U]nder Michigan law, severance is required only when a defendant shows that it is necessary to avoid prejudice to his substantial rights." *Clark v. McLemore,* 291 F. Supp. 2d 535, 545 (E.D. Mich. 2003)(citing M.C.R. 6.121(C)). "[T]here is no absolute right to a separate trial, and joint trials are strongly favored 'in the interest of justice, judicial economy and administration.'" *Id.* (quoting

- 11 -

*People v. Etheridge*, 196 Mich. App. 43, 52; 492 N.W. 2d 490 (1992)).

Severance should only be granted "if there is a serious risk that a joint trial would

compromise a specific trial right of one of the defendants, or prevent the jury from

making a reliable judgment about guilt or innocence." *People v. Hana*, 447 Mich.

325, 359-60; 524 N.W. 2d 682 (1994)). Finally, under M.C.R. 6.120(B), a court

must sever offenses that are not related as defined in MCR 6.120(B). MCR

6.120(B) defines related offenses that are those "based on (1) the same conduct,

or (2) a series of connected acts or acts constituting part of a single scheme or

plan."

In the present case, it was not fundamentally unfair to join the different

charges against petitioner in a single trial because " joinder was an efficient use

of resources." *Rodriguez v. Jones*, 625 F. Supp. 2d at 561; See also *Conte v.*

*Cardwell*, 475 F. 2d 698, 700 (6th Cir. 1973)(participation by state habeas corpus

petitioner in successive prison riots in the same institution separated in time by

less than two months were sufficient circumstances to permit joinder of offenses

in an indictment and in a trial without violation of due process.).

Petitioner was also not prejudiced by the joinder of the charges, because

the Michigan Court of Appeals indicated that much of the same evidence

involving the three separate cases would have been admissible against petitioner

pursuant to M.R.E. 404(b) at separate trials. *People v. Kwasny*, 2013 WL

5857632, at * 2-3, and n. 4. Because much of the same evidence would have

been admitted against petitioner at separate trials, petitioner was not prejudiced by the joinder of the charges in this case. See *LaMar v. Houk,* 798 F.3d 405, 428 (6th Cir. 2015), *cert. denied,* 136 S. Ct. 1715 (2016); *U.S. v. Jacobs,* 244 F. 3d 503, 507 (6th Cir. 2001); *Krist v. Foltz,* 804 F.2d 944, 947-48 (6th Cir. 1986). Petitioner is not entitled to habeas relief because she failed to identify which evidence that was admitted at her joint trial would have been inadmissible if she had been tried separately with respect to each set of charges. *LaMar*, 798 F. 3d at 428.

### C.  Claim # 2.  The discovery violation claim.

Petitioner next contends that her right to due process was violated at her 2011 trial when the judge allowed into evidence an $18,000 check that Michael DeWitt testified petitioner had given him.  At trial, defendant objected to the admission of the check because she had not been given the check during discovery.

It is well-settled that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)(denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent); *United States v. Presser*, 844 F. 2d 1275, 1281 (6th Cir.1988)(citing *Weatherford*).  A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle,* 291 F.

3d 416, 441 (6th Cir. 2002).

It is true that suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Any *Brady* claim fails for several reasons. First, evidence of the $18,000.00 check was disclosed to petitioner during trial. *Brady* generally does not apply to the delayed disclosure of exculpatory information, but only to a complete failure by the prosecutor to disclose such information. *See United States v. Davis,* 306 F. 3d 398, 421 (6th Cir. 2002)(internal citations omitted). If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant is prejudiced by its nondisclosure. *United States v. Word*, 806 F. 2d 658, 665 (6th Cir. 1986); *United States v. Bencs*, 28 F. 3d 555, 560-61 (6th Cir. 1994). The Sixth Circuit noted that "[T]he Supreme Court rejected the claim that the duty to disclose hinges on the usefulness of the material to pretrial preparation. Such a standard would 'necessarily encompass

- 14 -

incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense.'" *Bencs,* 28 F. 3d at 560, n. 5 (*quoting United States v. Agurs,* 427 U.S. 97, 112, n. 20 (1976)).

The mere fact that the defense theory may have been undermined by this new evidence would not entitle petitioner to relief.  Indeed, "[t]here is no rule that evidence must be excluded or a mistrial granted on the basis that a defendant had committed himself to a theory which was undermined by new evidence." *U.S. v. Atisha*, 804 F. 2d 920, 925 (6th Cir. 1986).  "There is always a possibility that new evidence will be discovered, even if the defense was structured around assurances made by the government." *Id.*  Any claim that the late disclosure of this check may have precluded defense counsel from adequate trial preparation is non-cognizable pursuant to *Agurs. See Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004)(citing *Bencs,* 28 F. 3d at 561).

Secondly, petitioner has failed to show that this $ 18,000.00 check was exculpatory.  The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to her under *Brady* was not disclosed to her. *Coe v. Bell*, 161 F. 3d 320, 344 (6th Cir. 1998).  Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns,* 328 F. Supp. 2d at 724.  "[M]ere speculation that a government file may contain Brady material is not sufficient" to prove a due-process violation. *United States v. Driscoll*, 970 F.

2d 1472, 1482 (6th Cir.1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir.1999).  Petitioner has failed to show that this $ 18,000.00 check exculpated her of the charged offenses.  Petitioner is therefore not entitled to habeas relief on any *Brady* claim. *Burns,* 328 F. Supp. 2d at 724.

### D.  Claim # 5.  The mistrial/cautionary instruction claim.

In her fifth claim, petitioner claims that the judge should have declared a mistrial during her 2012 trial for subornation of perjury and perjury after she made unsolicited remarks while testifying in the presence of the jury about the trial judge's harsh sentence that he imposed in her 2011 case, the trial judge's alleged extramarital affair with her, and petitioner's feelings of frustration with the court proceedings and the prosecutor's questions.

The Michigan Court of Appeals rejected petitioner's claim:

Immediately after the prosecutor ended his cross-examination of her, defendant had an outburst while she remained on the witness stand and under oath.  She asked the prosecutor whether he expected her to tell the truth and whether he wanted to know about the affair that she had with the trial judge.  Then, when the trial court told defendant to be quiet, she asked what it could do to her that it had not already done.  A defendant may not perpetrate chaos at her own trial and then obtain a mistrial on the basis of prejudice.  Where defendant created the chaos and the trial court, which was in a superior position to assess the motives of defendant, see MCR 2.613(C), stated that defendant made the outburst in an attempt to get a mistrial declared, the trial court's decision to deny the motion for a mistrial was within the range of reasonable and principled outcomes.

*People v. Kwasny*, 2013 WL 5857632, at * 10 (internal citations omitted).

A trial court has the discretion to grant or deny a motion for mistrial in the

absence of a showing of manifest necessity. *Walls v. Konteh,* 490 F. 3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F 3d 352, 354-55 (6th Cir. 1994).

The Michigan Court of Appeals' rejection of petitioner's mistrial claim was reasonable. Numerous circuits "have refused to permit mistrials when the prejudicial event was a defendant's own unprovoked outburst in court." *United States v. Gabrion*, 648 F.3d 307, 333 (6th Cir. 2011); *rev'd en banc in part on other grounds,* 719 F.3d 511 (6th Cir. 2013)(citing *United States v. Harris*, 2 F.3d 1452, 1456 (7th Cir.1993); *United States v. West*, 877 F.2d 281, 288 (4th Cir.1989); *United States v. Aviles*, 274 F.2d 179, 193 (2nd Cir.1960)). Indeed, "[t]o allow a defendant by his own misconduct to terminate his trial even temporarily would be to allow him to profit from his own wrong." *Id.* (*quoting Harris*, 2 F.3d at 1456). Granting a mistrial in such a case "could have negative effects on future trials: 'it would provide an easy device for defendants to provoke mistrials whenever they might choose to do so.'" *Id.* (*quoting Aviles*, 274 F.2d at 193). To grant a mistrial where a defendant created the prejudicial situation through an outburst or disruptive behavior would "allow a manipulative defendant..to delay his own sentencing through dangerous misconduct" and "would also set a bad precedent that could be abused by future manipulative defendants." *Id.* Accordingly, the judge's refusal to grant a mistrial after petitioner's own unsolicited outbursts did not deprive petitioner of a fair trial.

Petitioner in the alternative argues that the judge should have given the

- 17 -

jurors a cautionary instruction to ignore her intemperate outbursts. Because petitioner made these unprovoked remarks in front of the jury, the court's failure to instruct the jury to ignore petitioner's outburst did not violate her constitutional rights. *See Blackwell v. Wolff*, 403 F. Supp. 759, 766 (D. Neb. 1975), *aff'd sub nom. Blackwell v. Parratt*, 526 F.2d 1142 (8th Cir. 1975). Petitioner is not entitled to relief on her claim.

### E. Claim # 6. The prosecutorial misconduct claim.

Petitioner contends that the prosecutor committed misconduct at her 2012 perjury trial.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F. 3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 562 U.S. at 103).

Petitioner first contends that the prosecutor committed misconduct by referring in his closing argument to evidence presented at petitioner's 2011 trial but not at her perjury trial.

It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

The Michigan Court of Appeals rejected petitioner's claim:

In the challenged statement, the prosecutor told the jury that, because it heard about a clerk from the city of Bridgman, a police officer from the Buchanan Police Department, and Michael, all of whom testified at defendant's June 2011 trial, he did not present as much background to the jury as he possibly could have presented. He argued that, nonetheless, he presented evidence of all the elements of the charges of subornation of perjury and perjury. Viewing the challenged statement in context, *People v. McLaughlin*, 258 Mich.App 635, 644; 672 NW2d 860 (2003), the prosecutor never argued any testimony that was not entered into evidence at defendant's perjury trial.

*People v. Kwasny*, 2013 WL 5857632, at * 10.

The prosecutor in this case did not argue any facts that had not been introduced into evidence. When the prosecutor referred to petitioner's prior trial,

he did so only to explain why he did not introduce evidence from petitioner's prior case and that such evidence was not necessary to prove the elements of perjury and subornation of perjury.  Such comments were not improper. *See e.g. United States v. Washam*, 468 F. App'x 568, 573–74 (6th Cir. 2012)(when viewed in context, there was nothing improper about prosecutor's opening statement informing jury that some evidence about the crime and defendant's past would not be admitted).  In any event, the prosecutor's remarks were ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. (Tr. 2/22/12, p. 348). *See Hamblin v. Mitchell,* 354 F. 3d 482, 495 (6th Cir. 2003).

Petitioner next contends that the prosecutor committed misconduct by referring to her as a liar and challenging her veracity.

If a defendant testifies, a prosecutor may attack his credibility to the same extent as any other witness. *See United States v. Francis,* 170 F. 3d 546, 551 (6th Cir. 1999).  A prosecutor may argue that a defendant is lying during her closing argument "when emphasizing discrepancies between the evidence and that defendant's testimony." *Id.*  To avoid any impropriety, however, the prosecutor's comments must "reflect reasonable inferences from the evidence adduced at trial." *Id.* (internal quotation omitted).

In the present case, the prosecutor's comments about petitioner being a liar were made when the prosecutor was comparing petitioner's testimony with

the testimony of the other witnesses.  The prosecutor's remarks reflect

reasonable inferences from evidence adduced at trial, and thus it was not

improper for the prosecutor to suggest that petitioner was lying. *See United*

*States v. Johnson,* 169 F. App'x. 946, 950 (6th Cir. 2006).

Petitioner next contends that the prosecutor committed misconduct by

mentioning petitioner's outburst in his closing argument.

Although petitioner framed her claim as a prosecutorial-misconduct

challenge, "it amounts in the end to a challenge to the trial court's decision to

allow the introduction of this evidence." *Webb v. Mitchell*, 586 F.3d 383, 397 (6th

Cir. 2009).  "A prosecutor may rely in good faith on evidentiary rulings made by

the state trial judge and make arguments in reliance on those rulings." *Cristini v.*

*McKee*, 526 F.3d 888, 900 (6th Cir. 2008).  The judge ruled that the prosecutor

could mention petitioner's outburst in his closing argument, thus the prosecutor

did not commit misconduct.

Petitioner lastly contends that the prosecutor committed misconduct at

sentencing by arguing that petitioner was responsible for Ms. Brunke's prior

criminal acts and the loss of her Holmes Youth Trainee Act (HYTA) status as a

result. [3]  As the Michigan Court of Appeals noted in rejecting petitioner's claim,

---

[3] HYTA allows certain young offenders to plead guilty and complete probation or a youth training program, during which the entry of a judgment of conviction is held in abeyance. *See Does v. Munoz,* 507 F.3d 961, 965 (6th Cir. 2007)(citing M.C.L.A.762.11).  If the offender successfully completes the program, the charges are dismissed and there is no conviction. *Id.* (Citing M.C.L.A. 762.14).

*People v. Kwasny*, 2013 WL 5857632, at * 11, the prosecutor's comments were not improper.  The evidence at trial established that Ms. Brunke was encouraged by petitioner to commit perjury at the 2011 trial.  Ms. Brunke subsequently pleaded guilty to attempted perjury and lost her Holmes Youthful Trainee Act status as a result with respect to her prior convictions.  Because the comments were supported by the record, petitioner is not entitled to relief on her claim.

### F. Claim # 7.  The judicial bias/disqualification claim.

Petitioner next claims that the trial judge should have recused himself from her 2012 perjury trial because of judicial bias against her.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy* v. *Gramley*, 520 U.S. 899, 904-05 (1997).  However, to state a claim that a judge is biased, a defendant must show either actual bias or the appearance of bias creating a conclusive presumption of actual bias. *United States* v. *Lowe*, 106 F.3d 1498, 1504 (6th Cir. 1997).  "Under this standard, '[o]nly in the most extreme of cases would disqualification on the basis of bias and prejudice be constitutionally required.'" *Getsy* v. *Mitchell*, 495 F.3d 295, 311 (6th Cir.2007)(quoting *Williams* v. *Anderson*, 460 F.3d 789, 814 (6th Cir.2006)).  A judge is required to recuse himself or herself only where he has actual bias or "a predisposition 'so extreme as to display clear inability to render fair judgment.'" *Johnson* v. *Bagley*, 544 F.3d 592, 597 (6th Cir.

2008)(quoting *Liteky v. United States*, 510 U.S. 510, 551 (1994)). In reviewing a judicial bias claim, a federal habeas court should employ the initial presumption that the assigned trial judge properly discharged his or her official duties. See *Johnson* v. *Warren*, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004).

Petitioner points to unfavorable rulings by the judge in support of her judicial bias claim. Adverse rulings are not themselves sufficient to establish bias or prejudice which will disqualify a judge. *Vliet* v. *Renico*, 193 F. Supp. 2d 1010, 1016 (E.D. Mich. 2002); *Hence* v. *Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

Petitioner also claims that the judge should have recused himself because he was allegedly involved in an extramarital affair with petitioner. Petitioner presented no evidence to this Court in support of her claim. Petitioner does allude to two self-serving affidavits which she attached to her state appellate brief. [4] Petitioner presented no evidence to corroborate these allegations, which the judge denied when he denied the motion for disqualification. (Tr. 2/21/12, pp. 74-83). Petitioner's conclusory allegations of judicial bias are insufficient to establish her claim. *See Wright v. Lazaroff*, 643 F. Supp. 2d 971, 1000 (S.D. Ohio 2009). Petitioner is not entitled to relief on her claim.

### G. Claim # 10. The insufficiency of evidence claim.

Petitioner next claims that there was insufficient evidence to convict her of

---

[4] See Dkt. 10-29, Pg ID 2980-2986.

- 23 -

the perjury and subornation of perjury charges because Ms. Brunke's testimony was unreliable.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because rational people can sometimes disagree,

- 24 -

the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

"[I]t is well-settled that uncorroborated testimony of an accomplice" is sufficient to support a criminal conviction. *See United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010)(quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir.1999)). Ms. Brunke's testimony, if believed, would be sufficient to sustain petitioner's conviction. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F.3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of

sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000).

The mere existence of sufficient evidence to convict therefore defeats a

petitioner's claim. *Id.* Any insufficiency of evidence claim that rests on an

allegation of Ms. Brunke's credibility, which is the province of the finder of fact,

does not entitle petitioner to relief. *See Tyler v. Mitchell,* 416 F. 3d 500, 505 (6th

Cir. 2005).

### H. Claims # 3, 4, 8, and 9. The sentencing claims.

The Court consolidates petitioner's four sentencing claims for judicial

clarity.

In her third claim, petitioner argues that the judge improperly departed

above the sentencing guidelines in her 2011 case. In her eighth and ninth claims,

she makes the same claims with respect to her 2012 convictions. In her fourth

claim, petitioner contends that the judge erred in ordering her sentence on her

2012 conviction to run consecutive to her 2011 conviction.

It is well-established that "federal habeas corpus relief does not lie for

errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Petitioner's claim

that the state trial court misapplied the Michigan Sentencing Guidelines is not a

cognizable claim for federal habeas review, because it is basically a state law

claim. *See Howard v. White,* 76 F. App'x. 52, 53 (6th Cir. 2003); *See also Haskell*

*v. Berghuis,* 695 F. Supp. 2d 574, 598 (E.D. Mich. 2010). Errors in the

application of state sentencing guidelines cannot independently support habeas

relief. *See Kissner v. Palmer*, 826 F. 3d 898, 904 (6th Cir. 2016).  "Petitioner has

no state-created interest in having the Michigan Sentencing Guidelines applied

rigidly in determining [her] sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d

846, 867 (E.D. Mich. 2009)(citing *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740,

752 (E.D. Mich. 2005)).  Petitioner's claim that the state trial court improperly

departed above the sentencing guidelines range would thus not entitle her to

habeas relief, because such a departure does not violate any of petitioner's

federal due process rights. *See Austin v. Jackson*, 213 F. 3d 298, 301 (6th Cir.

2000).

Moreover, the trial court judge's alleged failure to articulate substantial and

compelling reasons for departing above the sentencing guidelines range, as

required by M.C.L.A. 769.34(3), would not entitle petitioner to habeas relief,

because the alleged violation of Michigan law is not a basis for habeas relief. *See*

*Jackson v. Hofbauer*, No. 08-cv-14649, 2008 WL 4937956, * 3 (E.D. Mich.

November 13, 2008); *See also Koras v. Robinson,* 123 F. App'x. 207, 214 (6th

Cir. 2005)(state trial judge's alleged failure to articulate the reasons for enhancing

habeas petitioner's sentence, in violation of M.C.R. 6.425 and Michigan case law,

did not present a basis for federal habeas corpus relief).

Petitioner is also not entitled to habeas relief on her fourth claim.  The

application of state sentencing laws governing consecutive sentencing does not

present a federal constitutional question but merely an issue of state law which is

not cognizable on habeas review. *See Coleman v. Koloski,* 415 F. 2d 745, 746 (6th Cir. 1969)(breaking and entering sentences running concurrently with each other and larceny sentences running concurrently with each other but consecutively to breaking and entering sentences involved matter of degree of punishment which, in absence of cruel and unusual punishment, was matter of interpretation for state courts and did not present a federal constitutional question); *See also Rosier v. Giurbino*, 245 F. App'x. 687, 688 (9th Cir. 2007). There is no "constitutionally cognizable right to concurrent, rather than consecutive, sentences." *U.S. v. White*, 240 F.3d 127, 135 (2nd Cir. 2001). Nor does the imposition of consecutive, as opposed to concurrent, sentences amount to cruel and unusual punishment in violation of the federal constitution. *See Barde v. U.S.,* 224 F.2d 959 (6th Cir. 1955). Petitioner's claim is non-cognizable on habeas review.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed

further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because she failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

### V. ORDER

IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

Dated:  April 6, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 6, 2017, by electronic and/or ordinary mail and also on
Betsy Kwasny #808634, Huron Valley Complex - Womens
3201 Bemis Road, Ypsilanti, MI 48197.


s/Barbara Radke
Deputy Clerk